### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERNEST J. BERARDI, individually and on behalf of a class of similarly situated persons,<br><br>        Plaintiff,<br><br>    v.<br><br>USAA GENERAL INDEMNITY COMPANY,<br><br>        Defendant. | Civil No. _____<br><br>ELECTRONICALLY FILED |

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant USAA General Indemnity Company ("USAA GIC"), by and through its undersigned counsel and pursuant to 28 U.S.C. §§ 1441 and 1446, and under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in pertinent part at 28 U.S.C. §§ 1332(d), 1446, and 1453) ("CAFA"), hereby removes to this Court the lawsuit styled *Ernest J. Berardi, individually and on behalf of a class of similarly situated persons v. USAA General Indemnity Company*, Civil No. 1964 (January Term, 2022), filed in the Court of Common Pleas of Philadelphia County, Pennsylvania. In support of this Notice of Removal, USAA GIC further states as follows:

### I. INTRODUCTION

1. On January 25, 2022, Plaintiff Ernest J. Berardi ("Plaintiff") filed this action on behalf of himself and a putative class. *See* **Exhibit 1** ("Complaint" or "Compl."), attached hereto.

2. According to the Complaint, Plaintiff and members of the putative class include "residents of the Commonwealth of Pennsylvania," Compl. ¶ 48, "who secured policies from

[USAA] providing coverage in accordance with the MVFRL,"[1] Compl. ¶ "49, "and where: (a) each class member owned a single vehicle with no other vehicles or motor vehicle policies in the household; (b) each member of the class was issued a motor vehicle policy by the defendant, USAA, in the Commonwealth of Pennsylvania providing coverage in accordance with the MVFRL; (c) defendant, USAA, knew, or should have known, that each member of the class owned only a single vehicle; (d) the defendant, USAA, knew of or should have known that there were no other vehicles or policies in the household of each member of the class; (e) each policy issued by the defendant, USAA, to each member of the class provided stacked uninsured and underinsured motorist coverages; (f) the defendant, USAA, charged an additional premium for the stacked uninsured and underinsured motorist coverages provided under the policies issued to each member of the class; (g) the stacked uninsured and underinsured motorist coverage benefit under each policy issued by the defendant, USAA, to each member of the class was not available since there was actually non intra-policy stacking nor inter-policy stacking policy benefit under those policies; (h) each member of the class paid an additional premium for stacked uninsured and underinsured motorist coverage; and (i) each member of the class is entitled to a return of premiums from the defendant, USAA, for this stacking coverage benefit that did not exist." Compl. ¶ 46.

3.    As set forth below, this case is removable to this Court under CAFA, as there is minimal diversity, more than 100 class members, and the amount in controversy exceeds five million dollars ($5,000,000).

## II. PARTIES

4.    The Complaint alleges: Plaintiff Ernest J. Berardi "is an individual citizen and resident of the Commonwealth of Pennsylvania," Compl. ¶ 1; he resides in Shrewsbury,

---

[1] Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. § 1738.

Pennsylvania, Compl. ¶ 1; and "[a]t all times material hereto, there existed, in full force and effect, a Personal Auto Policy issued by defendant, USAA, to plaintiff, Berardi, providing coverage in accordance with the MVFRL." Compl. ¶ 4.

5. The Complaint alleges that Defendant USAA "is a corporation organized and existing in the State of Texas, with its principal place of business in San Antonio, Texas." Compl. ¶ 2.

### III. PLAINTIFF'S ALLEGATIONS

6. The Complaint alleges that "Berardi, and each member of the class, owned only one vehicle," Compl. ¶ 9; and, with respect to Berardi and each member of the class, *inter alia*: "there were no other vehicles in the household," Compl. ¶ 10; "there were no other . . . policies in the household," Compl. ¶ 11; and "[t]here was, therefore, no intra-policy or inter-policy stacking of uninsured or underinsured motorist coverages under the USAA Policy and the policies issued to each member of the class." Compl. ¶ 12.

7. The Complaint further alleges: "The defendant, USAA, charged the plaintiff, Berardi, and each member of the class, an additional premium for stacked uninsured and underinsured motorist coverage despite knowing . . . that no stacking coverage benefit was being provided," Compl. ¶ 17; "USAA deliberately refused to advise such policyholders that the policy did not actually provide a stacking coverage benefit," Compl. ¶ 23; and "USAA charged an additional premium for stacked coverage under the USAA Policy and the policies issued to each member of the class, knowing that no stacking coverage benefit was provided while deliberately refusing to advise policyholders that the policies provided no stacking coverage benefit for which they were paying a premium." Compl. ¶ 25.

## IV. PLAINTIFF'S CLAIMS

8. Based upon the above-summarized allegations, Plaintiff asserts the following putative class action claims against USAA GIC:

- **Count I – Declaratory Relief.**  Compl., ¶¶ 73-111.  The Complaint seeks entry of an order declaring, *inter alia*:  "that the USAA Policy issued by the defendant, USAA, to the plaintiff, Berardi, does not provide a stacking benefit for uninsured and underinsured motorist coverages under the MVFRL for which a premium was paid"; and "the defendant, USAA, is required to return the premiums charged for this stacking coverage benefit for uninsured and underinsured motorist coverages which was not provided by the policies to the plaintiff . . . and to each member of the class."  Compl., pp. 17-18 (Count I "WHEREFORE" clause).

- **Count II – Return of Premiums.**  Compl., ¶¶ 112-145.  On the same facts, the Complaint seeks entry of an order awarding Berardi and each class member "all premiums paid for stacked uninsured and underinsured motorist coverages under policies issued by the defendant, USAA, in an amount not in excess of $75,000.00 for each class member."  Compl., p. 23 (Count II "WHEREFORE" clause).

- **Count III – Unjust Enrichment.**  Compl., ¶¶ 146-156.  On the same facts, the Complaint seeks essentially the same relief as pled under Count II, except under an unjust enrichment theory.  Compl., p. 25 (Count III "WHEREFORE" clause).

- **Count IV –Violation of Consumer Protection Law.**  Compl., ¶¶ 157-165.  On the same facts, the Complaint alleges that USAA GIC "engaged in actions and practices deemed unlawful by the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq.," Compl. ¶ 162; and seeks for Berardi and each class member, *inter*

*alia*, "return of premiums . . . or $100.00, whichever is greater," and treble damages. Compl., p. 27 (Count IV "WHEREFORE" clause).

- **Count V – Fraud.** Compl., ¶¶ 166-186. On essentially the same facts, the Complaint alleges, *inter alia*, that USAA GIC "defrauded the plaintiff, Berardi, and each member of the class, by charging and accepting a premium for a stacking coverage benefit for uninsured and underinsured motorist coverages knowing that the policies in question provided no such stacking coverage benefit." Compl. ¶ 182.

- **Count VI – Injunctive Relief.** Compl., ¶¶ 187-193. Plaintiff requests entry of an order enjoining USAA GIC "from charging premiums for a stacking coverage benefit for uninsured and underinsured motorist coverages under single vehicle policies issued in the Commonwealth of Pennsylvania in accordance with the MVFRL where there can be no stacking benefit since there are no other motor vehicle policies in the household." Compl., p. 32 (Count VI "WHEREFORE" clause).

9.  The Complaint seeks, as relief: (a) class certification; (b) declaratory relief; (c) injunctive or equitable relief; (d) actual damages or statutory damages; (e) pre- and post-judgment interest; and (f) other and further relief. Compl., pp. 12-32.

## V. THE REMOVAL REQUEST IS TIMELY

10. This Notice of Removal is timely under 28 U.S.C. § 1446(b). The Complaint was filed on January 25, 2022. *See* **Exhibit 2**, state court docket dated March 3, 2022 ("Pa. Dkt."), attached hereto. Counsel for Plaintiff has filed a certificate of service in the state court contending that the Complaint was served on February 1, 2022. *See* **Exhibit 3** ("Certificate of Service of Legal Papers Pursuant to Pa. R.C.P. 403"), attached hereto; *see also* Ex. 2 (Pa. Dkt.). March 3,

2022 is thirty days from February 1, 2022. Because this Notice of Removal is filed within thirty days of service, this Notice of Removal is timely. *See* 28 U.S.C. § 1446(b).

## VI. THE COMPLAINT SATISFIES ALL ELEMENTS FOR CAFA REMOVAL

11. CAFA was enacted to expand federal jurisdiction over class actions. *See Walsh v. Defs., Inc.*, 894 F.3d 583, 586 (3d Cir. 2018) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013); *see also Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 148-49 (3d Cir. 2009) (CAFA was intended to broaden federal court jurisdiction over class actions). Removal is proper under CAFA where, as here, a purported class action is filed in which: (a) there are 100 or more purported class members; (b) there is minimal diversity of citizenship; and (c) the aggregate amount in controversy for the entire proposed class exceeds five million dollars ($5,000,000), exclusive of costs and interest. *See* 28 U.S.C. § 1332(d)(2); *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (internal citations omitted). This action meets all the criteria for removal under CAFA.

### A. The Putative Class Contains One Hundred of More Members.

12. The Complaint pleads: "The plaintiff, Berardi, brings this action individually and on behalf of a class of similarly situated persons as a class action pursuant to the Pennsylvania Rules of Civil Procedure." Compl. ¶ 44. As pled, this case thus purports to be a "class action" within the meaning of CAFA because it was brought under a state statute or rule—namely, 231 Pa. Code Part I, Ch. 1700, Rule 1701, *et seq.*, which authorizes an action to be brought by one or more representative persons as a class action if the underlying requirements are met. *See* 28 U.S.C. § 1332(d)(1)(A)-(B); Compl. ¶¶ 44-72.

13. Plaintiff pleads: "The members of the class are so numerous that joinder of them is impracticable," Compl. ¶ 50; and "[i]dentification of the members of the class can be ascertained in and through discovery of the files . . . of the defendant, USAA." Compl. ¶ 51.

14. The putative class is in excess of 100 persons. The Complaint's description of the putative class states is unclear as to the time period targeted by the Complaint, but USAA GIC's preliminary assessment of its policy data indicates that there were more than sixty thousand (60,000) policies issued or renewed in Pennsylvania between November 2015 and January 2022 that had both (i) stacked uninsured and/ underinsured motorist coverage and (ii) only one vehicle on the policy. *See* **Exhibit 4**, Declaration of Clara Ramirez ("Ramirez Dec."), attached hereto and incorporated herein by reference.

15. The class, as defined in the Complaint, would ultimately be narrowed from this 60,000+ number by factors that are not readily known to USAA GIC, nor ascertainable by them. For example, persons having other household automobile insurance policies appear to be excluded from the class as defined. *See* Compl. ¶ 46.

16. Even assuming an extreme narrowing of the group of more than 60,000 persons preliminarily identified, however, the magnitude of that starting number makes it almost certain that there are exponentially more than 100 putative class members. *See* Ex. 4.

**B. The Putative Class Satisfies Minimal Diversity.**

17. CAFA requires only "minimal diversity," meaning that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

18. USAA GIC admits that USAA GIC "is a corporation organized and existing in the State of Texas, with its principal place of business in San Antonio, Texas." Compl. ¶ 2.

19. USAA GIC is a citizen of the State of Texas.

20. The Complaint's definition of the putative class limits the class members to those who, *inter alia*, are Pennsylvania residents. Compl. ¶ 48. The Complaint contains no other allegations of different state residence or citizenship for putative class members.

21. Minimal diversity is satisfied under CAFA here as long as the putative class is not entirely comprised of Texas citizens; or, conversely, as long as USAA is a citizen of some state other than Pennsylvania. Here, the putative class is pled to be entirely comprised of Pennsylvania residents and USAA GIC is a Texas citizen. There is complete diversity and/or minimal diversity.

### C. The Amount in Controversy Greatly Exceeds $5 Million.

22. USAA GIC disputes that Plaintiff has stated any viable claims and also disputes that Plaintiff and the putative class members are entitled to any relief. Nevertheless—again accepting the allegations of the Complaint only for purposes of CAFA removal analysis—the allegations of the Complaint and the nature of Plaintiff's claims make clear that the amount in controversy exceeds CAFA's jurisdictional threshold of five million dollars ($5,000,000), exclusive of interest and costs. *See* 28 U.S.C.§ 1332(d)(2) and (6).

23. CAFA provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83 (2014). To establish the amount in controversy sufficient to remove a class action case to federal court, a defendant need not submit proof to establish the amount in dispute, but rather "may simply allege or assert that the jurisdictional threshold has been met." *Id.* at 89 (internal citation omitted).

24. CAFA's amount in controversy requirement is satisfied where the defendant's notice of removal includes a plausible allegation that the stakes exceed $5,000,000. *See Winkworth v. Spectrum Brands, Inc.*, No. 19-cv-1011, 2019 WL 5310121, at *2 (W.D. Pa. Oct. 21, 2019) (quoting *Dart Cherokee Basin Operating Co.*, 574 U.S. at 89). When removing a suit, the

defendant may present an estimate of the amount in controversy based on a "reasonable reading of the value of the rights being litigated." *Judon*, 773 F.3d at 507 (internal citation omitted).

25.     The amount in controversy is satisfied on the *possible* recovery if Plaintiff and the class were to win on all of their claims. Whether they are likely to recover anything based on the merits of the case is irrelevant to the amount in controversy analysis. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) (noting that indeterminacy of the amount to be recovered does not defeat diversity jurisdiction, and it is immaterial what the plaintiff might eventually recover); *Clean Air Council v. Dragon Int'l Grp.*, No. 1:06-cv-0430, 2006 WL 2136246, at *4 (M.D. Pa. July 28, 2006) (citing *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 217 (3d Cir. 1999), *overruled on other grounds by Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005)) ("[O]nly if it appears to a legal certainty that Plaintiff cannot recover the minimum [jurisdictional] amount should [the court] remand."). *See also Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017) (citing *Blomberg v. Service Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011)) ("The party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties.").

26.     Here, as detailed below, the jurisdictional threshold has been met.

27.     The Complaint's "Count IV" alleges violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.* ("UTPCPL). *See* Compl. ¶¶ 157-165. "The monetary awards for UTPCPL violations are 'actual damages ***or one hundred dollars ($100), whichever is greater.***'" *Gregg v. Ameriprise Fin., Inc.*, 195 A.3d 930, 940-41 (Pa. Super. 2018) (quoting UTPCPL, 73 P.S. § 201-9.2). The $100 statutory damages under the UTPCPL are "$100 *per violation*." *Bailey v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 2:21-cv-00503, 2021 WL 1864031, at *2 (W.D. Pa. May 10, 2021) (citing UTPCPL).

28. When the UTPCPL's $100 per violation statutory damages provision is considered for purposes of CAFA removal assessment, the "maximum amount of statutory damages available" is considered to be $100 multiplied by the number of potential violations. *Bailey*, 2021 WL 1864031 at *2 (citing UTPCPL) (multiplying $100 per violation by an estimated 25,000 transactions for the putative class to determine that "the maximum UTPCPL award for [plaintiff] and a putative class is between $2,500,000 and $3,250,000 [accounting for the additional inclusion attorneys' fees]").

29. Here, as noted above within the discussion of the putative class size, USAA GIC's preliminary assessment of its policy data indicates that there were more than sixty thousand (60,000) policies issued or renewed in Pennsylvania between November 2015 and January 2022 that had both (i) stacked uninsured and/or underinsured motorist coverage and (ii) only one vehicle on the policy. *See* Ex. 4.

30. The amount in controversy is satisfied on the *possible* recovery if Plaintiff and the class were to win on all of their claims. *See Jumara*, 55 F.3d at 877. In this case, with a putative class potentially involving in excess of 60,000 policies, a showing of a statutory $100 violation under the UTPCPL for each of these 60,000 policies could result in $6 million in statutory damages. This far exceeds CAFA's $5 million removal threshold.

31. The Complaint also seeks treble damages. Compl., p. 27.]

32. Even if the potential class size were to be reduced during the course of discovery by excluding potential members based, for example, upon ascertaining that certain would-be class members possess other insurance policies in addition to their USAA GIC policy, trebled damages would likely far exceed the $5 million CAFA threshold.

33. The Complaint also seeks declaratory and injunctive or equitable relief. *See* Compl., ¶¶ 73-111; 187-193. The Third Circuit assigns estimated value to such claims for relief for purposes of CAFA analysis. *See*, e.g.*, Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 539 (3d Cir. 1995) (discussing consideration of "the value of the rights which the plaintiff seeks to protect" through declaratory or injunctive relief); *County of Washington, Pa. v. U.S. Bank Nat'l Ass'n*, No. 11-cv-1405, 2012 WL 3860474, at *19 (W.D. Pa. Aug. 17, 2012) (internal citation omitted) ("With regard to actions seeking declaratory relief, the amount in controversy is the value of the right of the viability of the legal claim to be declared . . . .").

34. In this case, the Complaint includes claims for declaratory and injunctive relief. *See* Compl., ¶¶ 73-111; 187-193. These claims provide additional items that may increase the total amount in controversy in this case. However, in light of the fact that the possible statutory damages and treble damages already significantly exceed the $5 million CAFA threshold, USAA simply notes here that Plaintiffs' claims for declaratory, injunctive, and other such relief have additional value.

35. In sum—and, again, crediting all allegations only for purposes of CAFA removal analysis—the Complaint and the putative class involve a possible exposure to statutory damages of $6 million, plus additional elements of possible damages, collectively resulting in a possible exposure in excess of $5 million.

36. Because there are 100 or more purported class members; there is minimal diversity of citizenship; and the aggregate amount in controversy for the entire proposed class exceeds $5 million, exclusive of costs and interest, CAFA removal is appropriate in this case. *See* 28 U.S.C. § 1332(d)(2).

## VII. USAA HAS COMPLIED WITH ALL REMOVAL PROCEDURES

37. In accordance with 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all counsel of record. This includes the following counsel for Plaintiff, as listed within the signature section of the Complaint:

> James C. Haggerty, Esq.
> HAGGERTY, GOLDBERG, SCHLEIFER & KUPERSMITH, P.C.
> 1801 Market Street, Suite 1100
> Philadelphia, PA 19103
>
> *and*
>
> Scott B. Cooper, Esq.
> SCHMIDT KRAMER P.C.
> 209 State Street
> Harrisburg, PA 17101
>
> *and*
>
> John P. Goodrich, Esq.
> JACK GOODRICH & ASSOCIATES
> 429 Fourth Avenue
> Pittsburgh, PA 15219

*See* Compl., p. 33.

38. Also in accordance with 28 U.S.C. § 1446(d), a copy of the Notice of Removal is being provided to the Clerk of Court for the Court of Common Pleas of Philadelphia County, Pennsylvania.

39. In accordance with 28 U.S.C. § 1446(a), true and correct copies of all state court process, pleadings, and orders served on USAA GIC are attached to this Notice of Removal. *See* Ex. 1 (Compl.); Ex. 3 (Certificate of Service); Ex. 5 (Attorney Appearances); *see also* Ex. 2 (Pa. Dkt.).

## VIII. <u>NON-WAIVER OF DEFENSES</u>

40. By filing this Notice of Removal, USAA GIC does not waive any defenses available to it.

41. By filing this Notice of Removal, USAA GIC does not admit any of the allegations in Plaintiff's Complaint. USAA GIC expressly reserves the right to contest those allegations at the appropriate time.

\* \* \*

**WHEREFORE**, Defendant USAA General Indemnity Company removes the above-captioned action from the Court of Common Pleas of Philadelphia County, Pennsylvania, and requests that further proceedings be conducted in this Court as provided by law.

Dated: March 3, 2022                     Respectfully submitted,

*/s/ Daniel J. Twilla*
Robert E. Dapper, Jr. (Pa. I.D. No. 46378)
Lyle D. Washowich (Pa. I.D. No. 84348)
Daniel J. Twilla (Pa. I.D. No. 93797)
BURNS WHITE LLC
Burns White Center
48 26th Street
Pittsburgh, PA 15222
Tel.:   (412) 995-3000
Fax:   (412) 995-3300
Email: redapper@burnswhite.com
            ldwashowich@burnswhite.com
            djtwilla@burnswhite.com

*Counsel for Defendant*
*USAA General Indemnity Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on March 3, 2021, the foregoing NOTICE OF REMOVAL, inclusive of its Exhibits, was electronically filed using the Court's CM/ECF system and will be electronically served by that system upon all users of that system associated with this case. Additionally, undersigned counsel has forwarded a copy of this Notice of Removal to the following counsel by electronic mail:

James C. Haggerty, Esq.
HAGGERTY, GOLDBERG,
SCHLEIFER & KUPERSMITH, P.C.
1801 Market Street, Suite 1100
Philadelphia, PA 19103

John P. Goodrich, Esq.
JACK GOODRICH & ASSOCIATES
429 Fourth Avenue
Pittsburgh, PA 15219

Scott B. Cooper, Esq.
SCHMIDT KRAMER P.C.
209 State Street
Harrisburg, PA 17101

*/s/Daniel J. Twilla*
Daniel J. Twilla (Pa. I.D. No. 93797)
BURNS WHITE LLC

*Counsel for Defendant*
*USAA General Indemnity Company*